UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x

In re                                                    Chapter 11

GREYLOCK CAPITAL ASSOCIATES, LLC,                        Case No. 21-22063 (RDD)

                    Debtor.

------------------------------------------------------------x

**MOTION OF UNITED STATES TRUSTEE TO STRIKE DEBTOR'S DESIGNATION AS A SUBCHAPTER V DEBTOR PURSUANT TO BANKRUPTCY RULE 1020**

William K. Harrington, the United States Trustee for Region 2 (the "**United States Trustee**") respectfully seeks an order striking Greylock Capital Associates, LLC's (the "**Debtor's**") designation as a subchapter V debtor in the above-referenced case pursuant to Fed. R. Bankr. P. 1020 (the "**Motion**"). In support of the Motion, the United States Trustee states as follows:

## INTRODUCTION

The United States Trustee objects to the Debtor's designation as a subchapter V debtor because the Debtor is not eligible to be a debtor under subchapter V. The Debtor's liabilities as set forth in documents filed along with the Debtor's voluntary petition far exceed the statutory cap of $7.5 million necessary for subchapter V eligibility. Because the Debtor and its non-debtor subsidiaries have always filed consolidated financial statements, the Debtor's Statement of Financial Condition shows that, as of the date the Debtor filed the voluntary petition, the Debtor's total liabilities amounted to $255,560,105.

The Debtor's post-petition attempts to drastically reduce to reduce the amount of its total liabilities by arbitrarily decoupling its financial statements from those of its subsidiaries

solely to make itself eligible under subchapter V is unavailing. The Debtor's belated adoption of the practice of severing its financial statements from those of its subsidiaries does not change the fact that the Debtor and its subsidiaries filed consolidated statements as of the petition date. The relevant statute provides that a debtor's eligibility to be designated as a subchapter V debtor is determined *as of the petition date*. Accordingly, the debtor's post-petition attempt to change its financial reporting practices solely to qualify as a subchapter V debtor must fail.

In addition, the Debtor is not actually engaged in a commercial or business enterprise. the Debtor is comparable to an "empty shell" for purposes of section 101(51D) of the Bankruptcy Code. The Debtor was able to decouple from its non-debtor subsidiaries post-petition because it had no real business activity. Although the Debtor seems to hold cash from one or more of the non-debtor related entities, there is no evidence that there is a contractual obligation for the non-debtors to send the funds upstream to the Debtor. In fact, there is no evidence that the debtor has contracts or sales agreements with any related or unrelated entity. Finally, the Debtor appears to have no accounts receivable.

Only debtors who are in need of the benefits of section 101(51D) for small businesses are eligible for the benefits of Subchapter V. Those benefits are reserved for debtors that are truly engaged in commercial activity, so that they can successfully reorganize and work more efficiently and effectively post-confirmation with those with whom they do business. Here, the Debtor, unlike at least certain of its non-debtor subsidiaries, does not appear to do business with anyone. The Debtor lacks the characteristics of an active business that would be eligible under Subchapter V. Accordingly, the Court should find that the Debtor is not eligible as a small business debtor under sections 101(51D) and subchapter V.

# FACTS

1. On January 31, 2021 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code, as well as its Schedules. ECF Doc. Nos. 1, 3; *see* Declaration of Richard Morrissey (the "**Morrissey Decl.**"), attached hereto, ¶ 2. The Debtor checked the box on the Petition indicating that "its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates0 are less than $7,500,000. Petition, item 8, pg. 2 of 49, ECF Doc. No. 1.

2. Also on January 31, 2021, the Debtor filed its Schedules. ECF Doc. No. 3, Morrissey Decl., ¶ 3.

3. On February 1, 2021 the United States Trustee appointed Eric M. Huebscher as the Subchapter V Trustee. ECF No. 8; Morrissey Decl., ¶ 4.

4. The meeting of creditors pursuant to section 341(a) of the Bankruptcy Code was conducted on February 25, 2021. Morrissey Decl., ¶ 5.

5. The Debtor scheduled no real property, and scheduled $1,686,191.04 in personal property, including bank account balances totaling $518,984.36, a letter of credit (security for a commercial lease) in the amount of $456,003.75, office equipment valued at $56,202.93, a whole life insurance policy, whose cash surrender value was $305,000.00, and the debtor's interests in its subsidiaries, valued at a total of $350,000.00. Schedule B, ECF Doc. No. 3; Morrissey Decl., ¶ 6.

6. As to liabilities, the Debtor scheduled no secured or unsecured priority claims, but listed nine (9) general unsecured creditors whose claims totaled $825,662.70. Schedule F, ECF Doc. No. 3. Subsequently, on March 2, 2021, the Debtor filed an Amended Schedule F, listing only eight (8) general unsecured creditors whose claims totaled $347,470.18. Amended

3

Schedule F, ECF Doc. No. 32; Morrissey Decl., ¶ 7.

7. To date, the Claims Register lists five (5) claims, including the claim of the Internal Revenue Service (the "**IRS**") that was not listed on the Debtor's Schedules. Of the IRS claim, $6,127,701.37 is classified as an unsecured priority claim, and $723.06 was classified as a general unsecured claim. Claims Register, Claim No. 3; Morrissey Decl., ¶ 8.

8. Another claim not listed on the Schedules was the claim of 285 Madison Owner LLC, in the amount of $1,118,924.89 *Id.* at Claim No. 2. Of this amount, $456,000.00 was classified as a secured claim and $662,924.89 was classified as a general unsecured claim. *Id.*[1]; Morrissey Decl., ¶ 9.

9. On February 17, 2021, the Court set March 29, 2021 as the last day for creditors to file proofs of claim. ECF No. 26; Morrissey Decl., ¶ 10.

10. Although the Petition identifies the debtor as a Subchapter V debtor as defined in 11 U.S.C. § 1182(1), with aggregate noncontingent liquidated debts of less than $7,500,000, *see* Petition, item 8, pg. 2 of 48, ECF Doc. No. 1, the Debtor's Statement of Financial Condition, which is attached to the Petition indicates that the Debtor's liabilities total considerably more than $7.5 million. *See* Statement of Financial Condition, ECF Doc. 1, Doc. 1-4; Morrissey Decl., ¶ 11.

11. Specifically, the Debtor listed its liabilities in the total amount of $255,560,105. *See id.* at pg. 1 of 3. It also listed its Members' capital at -$248,921,255. *Id.*

12. The Debtor's 2019 U.S. Return of Partnership Income (Form 1065), also attached to the Petition, states that the Debtor's total assets were $11,390,660. *See id.* at ECF

---

[1] By Order dated February 17, 2021, the Court set March 29, 2021 as the last day for creditors to file proofs of claim. ECF No. 26; Morrissey Decl., ¶ 10.

4

Doc. No. 1, Doc. No. 1-5: Morrissey Decl., ¶ 12.

13. On February 18, 2021, the Debtor filed a Period Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest, pursuant to Bankruptcy Rule 2015.3 (the "**2015.3 Statement**"). ECF Doc. No. 28; Morrissey Decl., ¶ 13.

14. The 2015.3 Statement substantially revises the information contained in the aforementioned Statement of Financial Condition. Specifically, the Debtor adjusted its liabilities downward from $255,560,105 to $2,334,942. *See* 2015.3 Statement, Statement of Financial Condition, ECF Doc. No. 28, pg. 3 of 79. Meanwhile, the Debtor also revised its Members' capital upward from a negative number, -$248,921,255, to a positive number, $4,011,986. *Id.*; Morrissey Decl. ¶ 14.

## DISCUSSION

### A. Timeliness of Objection to Subchapter V Designation

Rule 1020(b) of the Federal Rules of Bankruptcy Procedure provides that any objection to the debtor's designation as a small business debtor may be filed by the U.S. Trustee within thirty days of the meeting of creditors or within thirty days after any amendment to the statement, whichever is later. The Debtor filed the amendment to the Petition designating itself as a small business debtor under Subchapter V on March 2, 2021, therefore, this motion is timely filed.

### B. Eligibility for Subchapter V

The Small Business Reorganization Act of 2019 ("SBRA"), otherwise known as "Subchapter V", was enacted on August 23, 2019 and created a new avenue of relief for certain chapter 11 debtors. *See* SBRA, H.R. Rep. No. 3311, 116th Cong. § 2 (2019). Only

small business debtors below a certain debt threshold are eligible for Subchapter V. *Id.* Under 11 U.S.C. § 101(51D), a 'small business debtor' is defined as:

> (1) Debtor.—The term "debtor"—
>
> (A) subject to subparagraph (B), a person engaged in commercial or business activities (including any affiliate of such person that is also a debtor under this title and excluding a person whose primary activity is the business of owning single asset real estate) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition or the date of the order for relief in an amount not more than $2,725,625 (excluding debts owed to 1 or more affiliates or insiders) not less than 50 percent of which arose from the commercial or business activities of the debtor.
>
> (B) does not include—
>
> (i) any member of a group of affiliated debtors that has aggregate noncontingent liquidated secured and unsecured debts in an amount greater than $2,725,625 (excluding debt owed to 1 or more affiliates or insiders)
> ...

11 U.S.C. § 101(51D). The Coronavirus Aid, Relief, and Economic Security ("CARES") Act amended the SBRA to include a separate definition of "debtor" for Subchapter V purposes that is identical to the definition of "small business debtor" in all respects except the debt limitation is temporarily increased from $2,725,625 to $7,500,000 only for those cases filed within a one-year period -- from its enactment on March 27, 2020 through March 27, 2021. *See* CARES Act, H.R. Rep. No. 116-748 (2020)). Notably, the CARES Act explicitly states that "[t]he amendment [to 11 U.S.C. § 1181] . . . shall apply only with respect to cases commenced under title 11, United States Code on or after the date of enactment of this [CARES] Act." *Id.*; *see also In re Parking Mgmt., Inc.*, 620 B.R. 544, 547, 549 (Bankr. D. Md. 2020), quoting 11 U.S.C. § 1182(a)(A) (eligibility for Subchapter V requires that debtor's "noncontingent liquidated secured and nonsecured debts as of the filing of the petition" total "not more than $7,5000,000").

6

### C. The Debtor Was Ineligible to Elect Subchapter V Because Its Liabilities As of the Petition Date Exceeded the Debt Limit for Subchapter V Relief

#### 1. Under Rule 1020(a), the Court Should Reject the Debtor's Statement That it Qualifies as a Small Business Debtor

Federal Rule of Bankruptcy Procedure 1020(a) provides, in part, that, once a small business debtor designates itself in the petition, "…the status of the case as a small business case shall be in accordance with the debtor's statement under this subdivision, unless and until the court enters an order finding that the debtor's statement is incorrect." Fed. R. Bank. P. 1020(a). Rule 1020(b) provides that the United States Trustee or a party in interest may object to the debtor's statement that it qualifies under Subchapter V, so long as the objection is filed "no later than 30 days after the conclusion of the meeting of creditors held under § 341(a) of the Code, or within 30 days after any amendment to the statement whichever is later." Fed. R. Bank. P. 1020(b); *Parking Mgmt.*, 620 B.R. at 551.[2]

As the Court in *Parking Mgmt.* noted, "the proper characterization of creditor claims" warrants judicial scrutiny, given that "Congress expanded the reach of Subchapter V to debtors who have up to $7.5 million in debts." *Id.* The Court reasoned that the $7.5 million threshold had "made Subchapter V available to entities having more complex creditor relationships than a debtor in a typical Chapter 12 or 13 case." *Id.* In light of the complexity of larger cases, the Court found that it "need not find a lack of good faith or candor to conclude it should review the claims in this case." *Id.*

Moreover, the Court found that section 1182 of the Bankruptcy Code required that the debts be considered as of the date the chapter 11 petition is filed. *Id.* at 551-52. The Court's

---

[2] Here, the 341(a) meeting was conducted on February 25, 2021, Morrissey Decl., ¶ 5, and the Debtor amended its schedules on March 2, 2021, that is, less than 30 days before the filing of the instant Objection. ECF Doc. No. 32.

7

finding of incorrect designation is triggered by an objection to the designation. *See In re Angel Fire Water Co.*, LLC, No. 13–10868 ta11, 2015 WL 251570, at *6 (Bankr. D. N.M. Jan. 20, 2015) (finding that because the debtor never elected to be a small business debtor and no party objected to its status, it would be inappropriate for the court to alter the debtor's statement *sua sponte*). Pursuant to Fed. R. Bankr. P. 1009(a), "[a] voluntary petition, list, schedule or statement may be amended by a debtor as a matter of course at any time before the case is closed." However, such amendment by the debtor is not necessarily controlling. The designation by the debtor in the original petition still retains evidentiary effect as it is signed under penalty of perjury. *In re Roots Rents, Inc.,* 420 B.R. 28*,* 39-40 (Bankr. D. Idaho. 2009).

The Debtor filed the Petition on January 31, 2021, and is subject to the applicable debt limit of $7,500,000.00 for Subchapter V. *See* ECF No. 1; 11 U.S.C. § 1182(1)(A). Although the amount of debt that the Debtor scheduled in the Petition and Schedules was below the threshold amount for Subchapter V cases, other information disclosed in the Debtor's filings tells a different story. In fact, according to certain of the documents filed by the Debtor, the amount of the Debtor's liabilities as of the Petition Date far exceeds the Subchapter V threshold.

In the Schedules filed on the Petition Date, the Debtor stated that its liabilities, spread among nine (9) general unsecured creditors, totaled $825,662.70. Schedule F, ECF Doc. No. 3. In its Amended Schedule F, filed on March 2, 2021, the Debtor's stated amount of liabilities actually decreased to $347,470.18. Amended Schedule F, ECF Doc. No. 32; Morrissey Decl., ¶ 7. The number of the Debtor's creditors as reflected in Amended Schedule F decreased from nine (9) to eight (8). *Id.*

The Court's Claims Register lists (5) proofs of claim, two of which are substantial claims

that were not included in the Schedules.[3] First, the IRS filed a proof of claim, of which $6,127,701.37 was classified as an unsecured priority claim, and $723.06 was classified as a general unsecured claim. Claims Register, Claim No. 3; Morrissey Decl., ¶ 8. The second claim not listed on the Schedules was the claim of 285 Madison Owner LLC, in the amount of $1,118,924.89. *Id.* at Claim No. 2. Of this amount, $456,000.00 was classified as a secured claim and $662,924.89 was classified as a general unsecured claim. *Id.*; Morrissey Decl., ¶ 9.[4]

Apart from the two unscheduled claims, the Debtor's Statement of Financial Condition, which is attached to the Petition indicates that the Debtor's liabilities as of the Petition Date totaled far more than $7.5 million. *See* Statement of Financial Condition, ECF Doc. 1, Doc. 1-4; Morrissey Decl., ¶ 11. In fact, the Statement of Financial Condition showed that the Debtor's liabilities amounted to fully $255,560,105. *See id.* at pg. 1 of 3. It also listed its Members' capital at -$248,921,255. *Id.* Another indication that the Debtor was considerably larger that the Schedules suggested lies in the large difference between the assets listed in Schedule B, $1,686,191.04, and the amount of assets the Debtor has reported to the IRS. The Debtor's 2019 U.S. Return of Partnership Income (Form 1065), also attached to the Petition, states that the Debtor's total assets were $11,390,660. *See id.* at ECF Doc. No. 1, Doc. No. 1-5; Morrissey Decl., ¶ 12.

On February 18, 2021, apparently cognizant of the fact that the information provided in the Statement of Financial Condition would render it ineligible to be a Subchapter V debtor, the

---

[3] Additional claims could be filed, as, by Order dated February 17, 2021, the Court set March 29, 2021 as the last day for creditors to file proofs of claim. ECF No. 26; Morrissey Decl., ¶ 10.

[4] At least one court has held that claims for lease rejection damages are contingent as of the filing date, because parties can object to lease rejection, and because rejection is subject to court approval. *In re Parking Mgmt., Inc.*, 620 B.R. at 553-54. Here, by Order dated February 25, 2021, the Court granted the Debtor's Motion to reject its lease. Thus, following the ruling in *Parking Mgmt.,* "the lease rejection claims were contingent as of the petition date. . . ." *Id.* at 554.

Debtor filed a Period Report Regarding Value, Operations, and Profitability of Entities in Which the Debtor's Estate Holds a Substantial or Controlling Interest, pursuant to Bankruptcy Rule 2015.3 (the "**2015.3 Statement**"). ECF Doc. No. 28; Morrissey Decl., ¶ 13.

The 2015.3 Statement substantially revised the information contained in the aforementioned Statement of Financial Condition. Specifically, the Debtor radically adjusted its liabilities downward from $255,560,105 as of the Petition Date to $2,334,942 as of December 31, 2019, $1,391,294 as of December 31, 2020, and $1,261,148 as of January 31, 2021. *See* 2015.3 Statement, Statement of Financial Condition, ECF Doc. No. 28, pg. 3, 7, 11 of 79. Morrissey Decl., ¶ 14. [5] Nothing in the 2015.3 Statement explains or justifies the drastic post-petition reduction of the Debtor's liabilities from an amount far above the Subchapter V threshold to an amount safely below that threshold. The Debtor's post-petition attempt retroactively to slash the amount of its liabilities has no apparent purpose, other than to enable it to become eligible under Subchapter V. The stated amount of the Debtor's liabilities as of the Petition Date as reflected in the Statement of Financial Condition attached to the Petition, ECF Doc. No. 1, should control and render the Debtor ineligible under Subchapter V.

### D. The Debtor Was Ineligible to Elect Subchapter V Because It is not Engaged in Any Discernible Business Activity

Section 101(51D)(A) of the Bankruptcy Code defines a small business debtor as "a person engaged in business activities. . . ." 11 U.S.C. § 101(51D)(A); *In re Ventura*, 615 B.R. 1, 13 (Bankr. E.D.N.Y. 2020). As the court in a recent case has observed, the definition of "engaged in" is "actively and currently involved." *In re Thurmon*, , Case No. 20-41400-can11,

---

[5] Meanwhile, the Debtor also revised its Members' capital upward from a negative number, -$248,921,255, to positive numbers, specifically, $4,011,986, as of December 31, 2019, $5,247,488 as of December 31, 2020, and $4,755,064 as of January 31, 2021. *Id.*; Morrissey Decl. ¶ 14. The 2015.3 Statement does not explain how this transformation occurred.

2020 WL 7249555, at *4 (Bankr. W.D. Mo. Dec. 8, 2020). Specifically, the court held, "keeping the empty shell of [a] former business entity open with a [secretary of state's] office does not render [a company] 'engaged' in business activities. . . ." *Id.*

Here, the Debtor is analogous to that of an "empty shell." Whether the Debtor accomplished this radical transformation by decoupling its own assets and liabilities from those of its non-debtor subsidiaries, or by simply slashing the amount of its liabilities, the question that arises is how the Debtor can be so flexible with its numbers. The apparent answer is that, unlike at least some of its non-debtor subsidiaries, the Debtor has no real business activity. There is no evidence in the record of this case that the Debtor has any contracts or sales with any third or related party. Although the Debtor appears to hold cash from one or more of the non-debtor subsidiaries, there is no evidence that any of the subsidiaries is obligated to remit any funds upstream to the Debtor. Nothing in the record suggests that the non-debtor entities could not stop the flow of funds to the Debtor. Finally, the Debtor lists no accounts receivable, a further indication that the Debtor has no real business activity. *See* Schedule B, ECF Doc. No. 3; Rule 2015.3 Statement, ECF Doc. No. 28.

Section 101(51D)'s purpose is to provide "the benefits of small business debtor treatment" to debtors "who are in particular need" of those benefits. *In re Johnson*, , Case No. 19-42063-ELM, 2021 WL 825156, at *6 (Bankr. N.D. Tex. Mar. 1, 2021). Such benefits are available to small businesses that are truly engaged in commercial activity, so that they can successfully reorganize. *Id.* Allowing them to remain in business helps "'not only the owners, but employees, suppliers, customers, and others who rely on that business." *Id.* quoting H.R. Rep. No. 116-171, 116th Cong., 1st Sess. (2019), *reprinted at* 2019 WL 3401849 (Jul. 23, 2019) (quoting comments of Rep. Ben Cline); *but see In re Wright*, C/A No. 20-02=1035-HB, 2020

WL 2193240, at *3 (Bankr. D.S.C. Apr. 27, 2020) (court allowed inactive debtor with residual business debt to remain in Subchapter V).

A person or entity engaged in "commercial or business activities" under section 101(51D) is "a person engaged in the exchange or buying and selling of economic goods or services for profit." *Johnson*, 2020 WL 2193240, at *8. Here the Debtor is not engaged in the buying and selling of goods or services of its own for profit. *See id.* As noted above, nothing in the record of this case suggests that the Debtor has any contracts or sales of its own. Nothing suggests that the non-debtor related entities must transfer any funds upstream to the Debtor. Nothing in the record suggests that the non-debtor entities could not unilaterally halt the flow of funds to the Debtor. Moreover, the Debtor lists no accounts receivable. Accordingly, the Debtor is ineligible under Section 101(51D) to be a small business debtor that can enjoy the benefits of Subchapter V.

With the stroke of a pen, the Debtor has attempted to become eligible under Subchapter V post-petition by suddenly causing hundreds of millions of dollars in liabilities to vanish into thin air. The Debtor has tried to deconsolidate its financial reporting for one reason, and one reason only: It wishes to benefit from Subchapter V even though it is not really engaged in commercial or business activity. The Debtor's lack of the hallmarks of an active business may be enable it to be sufficiently flexible to change its numbers at the drop of a hat; but it is not sufficiently flexible to enable it to change its stripes and become eligible under Subchapter V.

WHEREFORE, the United States Trustee respectfully requests that the Court (1) strike the Debtor's election to proceed under Subchapter V because the Debtor is above the threshold

debt limit of $7,500,000, and because it is not engaged in commercial or business activities pursuant to Section 101(51D) of the Bankruptcy Code; and (2) grant such other and further relief as it deems just and proper.

Dated: New York, New York
       March 26, 2021

                                      Respectfully submitted,

                                      WILLIAM K. HARRINGTON
                                      United States Trustee, Region 2

                                      */s/Richard C. Morrissey*
                                      Richard C. Morrissey
                                      Office of the United States Trustee
                                      201 Varick Street, Suite 1006
                                      New York, NY 10014
                                      Tel: 212-510-0500